UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____-CIV-_____/_____

EMELIKE NWOSUOCHA, an individual,

     Plaintiff,

vs.

AMBITEC, INC., a Florida Corporation,

     Defendant.
_____/

## **COMPLAINT**

1.     Plaintiff, EMELIKE NWOSUOCHA (hereinafter referred to as "Plaintiff" and "NWOSUOCHA"), was an employee of Defendant, AMBITEC, INC., a Florida Corporation (hereinafter referred to as "Defendant" and "AMBITEC, INC.") and brings this action against AMBITEC, INC. for alleged race discrimination, disparate treatment, and retaliation in violation of 42 U.S.C. §1981 (Section 1981), Title VII of the Civil Rights Act, 42 U.S.C. §2000 *et seq.* (Title VII), and the Florida Civil Rights Act, Florida Statutes §760.01 *et seq*. (FCRA).

2.     NWOSUOCHA is an individual whose race/color is African American/Black and who at all times material to this action resided in Miami-Dade County, Florida, within the jurisdiction of this Court.

3.     AMBITEC, INC. has at all times material to this Complaint owned, operated, and/or managed a business specializing in the design and distribution of military, law enforcement, and security products—including, by way of example AR500 armor steel plates, level IV ceramic plates, tactical vests, and every day carry (EDC) paraphernalia—with Defendant's corporate office located at 4045 Sheridan Avenue, Suite 118, Miami Beach, Florida

33140 and AMBITEC, INC.'s warehouse facility located at 7770 NW 22nd Avenue, Miami, Florida 33147 in Miami-Dade County within the jurisdiction of this Court.

4.      Jurisdiction is conferred on this Court by 28 U.S.C. §§1331, 1337, 1343, and 1367.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391, as a substantial part of the events giving rise to this action occurred in Miami-Dade County, within the jurisdiction of the United States District Court for the Southern District of Florida.

6.      At all times material to this action, AMBITEC, INC. transacted business in Miami-Dade County, Florida and to other locations inside and outside the United States, including but not limited to Defendant exporting goods internationally, and employed fifteen (15) or more employees for each working day in each of twenty (20) or more weeks in the years 2019, 2020, and/or 2021.

7.      At all times material to this action, NWOSUOCHA was an employee of AMBITEC, INC. within the meaning of 42 U.S.C. §1981 Title VII, 42 U.S.C. §2000e(f), and the FCRA, F.S. §760.10(1)(a).

8.      At all times material to this action, AMBITEC, INC. had fifteen (15) or more employees and constituted an employer of NWOSUOCHA within the meaning of 42 U.S.C. §1981, Title VII, 42 U.S.C. §2000e(b), and the FCRA, F.S. §760.02(7).

9.      In approximately late December 2019/early January 2020, AMBITEC, INC. hired NWOSUOCHA as a Social Media Marketing Assistant based upon a regular rate of $14.00 per hour.

10.     Between approximately January 5, 2020 and August 12, 2020, NWOSUOCHA satisfactorily performed his duties as a Social Media Marketing employee for AMBITEC, INC.

based at Defendant's warehouse facility located at 7770 NW 22nd Avenue, Miami, Florida 33147, with Plaintiff's social media marketing duties consisting of: (a) responding to and compiling e-mail correspondence; (b) management and content creation for AMBITEC, INC.'s social media, (c) management with digital creators; and (d) customer service—in addition to which social media marketing work NWOSUOCH also was required to perform warehouse and shipping duties for Defendant beginning in approximately March 2020 in order to help carry the workload needed to support AMBITEC, INC.'s business as a result of the impact of the COVID-19 pandemic and lockdowns (with two (2) other warehouse employees—Levi Getlin (White) and Menachem Olenski (White)—continuing to work in the warehouse while the rest of the office was out and/or quarantining.

11.     Throughout NWOSUOCHA's employment with AMBITEC, INC. between approximately January 5, 2020 and August 12, 2020, NWOSUOCHA was subjected to harassment, discrimination, and disparate treatment by AMBITEC, INC. because of Plaintiff's race/color, African American/Black, including but not necessarily limited to:

(i) in January 2020 while Eli Eichenblatt (White), AMBITEC, INC.'s President & Chief Executive Officer, was asking NWOSUOCHA and other new hires of AMBITEC, INC., including, for example, Alexis Ramos (Hispanic), about their ethnic backgrounds and astrological signs while at a restaurant in midtown Miami, Eichenblatt had no issue with other employees' backgrounds but when NWOSUOCHA answered that Plaintiff is of Nigerian and Eskimo heritage, Eichenblatt stated: "Ewww, what the fuck is that?";

(ii) AMBITEC, INC. (a) hiring Alexis Ramos around the same time as NWOSUOCHA as a Social Media Marketing Assistant but Defendant initially paying Ramos based upon a rate of approximately $20.00 per hour—the same hourly rate NWOSUOCHA sought from Defendant after Plaintiff was interviewed by Eichenblatt and Menachem (a/k/a Mendel) Berns (White), AMBITEC's Marketing Director; (b) subsequently increasing Ramos' regular rate to approximately $25.00 per hour in or around March 2020 when Defendant also switched Ramos in an accounting role.;

(iii) NWOSUOCHA performing warehouse work for AMBITEC, INC. between approximately March 2020 and April 2020 at the rate of $14.00 per hour while AMBITEC, INC. paid its warehouse employees at higher rates of pay than Plaintiff for the performance of similar work;

(iv) in or around April 2020, while NWOSUOCHA was at lunch at a pizza restaurant in midtown Miami along with Berns, Plaintiff's immediate supervisor, as well as Matan Suissa (White), a customer service employee, and Levi Getlin, a warehouse employee, Eichenblatt opened the conversation by asking Plaintiff: "Why are most African Americans poor? and "Why can't they get out of poverty";

(v) in approximately mid-May 2020, after George Floyd-and-related social justice protests in the area and a floor resulted in the power being knocked out and a fence broken into at AMBITEC, INC.'s facility, although Florida Power & Light (FPL) got Defendant's electricity restored, when news spread that there would be additional protests and the possibility of further robberies in the area, Eichenblatt told NWOSUOCHA that looters from nearby riots had tried to break into Defendant's warehouse, followed by Eichenblatt stating to Plaintiff: "Hey, if you're going to protest with your people, make sure you pick me up a Rolex," which statements NWOSUOCHA expressly objected to;

(vi) in approximately May 2020, during a website layout, after NWOSUOCHA posted a photo of a Black female soldier in tactical gear that AMBITEC, INC. sold to the public, Eichenblatt stated to Plaintiff: "See, Emelike, that's the kind of women you like" while Eichenblatt directed Plaintiff not to post women "who look like that" again, as part of which Eichenblatt instead made reference to an image of a Hispanic woman that was already posted, which Eichenblatt stated "was a better choice and Mendel's type of girl."; and

(vii) in approximately June 2020, NWOSUOCHA asked Eichenblatt to increase Plaintiff's regular rate of pay to at least $20.00 per hour based upon the quality of NWOSUOCHA's work product for AMBITEC, INC. and Defendant having recently hired several employees with no prior work experience at the rate of approximately $15.00 per hour—all of whom were White—but Defendant did not adjust NWOSUCHA's compensation.

12.    In approximately late April 2020 when Eichenblatt returned to the office, Eichenblatt asked NWOSUOCHA about the working conditions at AMBITEC, INC. after Plaintiff had been performing both social media marketing and warehouse duties for Defendant, at which time NWOSOUCHA requested that AMIBTEC, INC. increase Plaintiff's regular rate of

pay to at least $20.00 per hour, but Eichenblatt advised Plaintiff that Defendant "could" only increase NWOSUOCHA's regular rate to $17.00 per hour.

13.     In or around mid-May 2020, AMBITEC, INC. hired a new customer service representative named Eric who also worked at Defendant's warehouse along with NWOSUOCHA—the only other African American/Black employee besides NWOSUOCHA—and shortly after Eric's employment began, Eric was instructed by Eichenblatt to get tested for COVID-19 because Eric was not feeling well.  When Eric subsequently tested positive for COVID-19, Eichenblatt instructed Eric to stay home and Eric worked from home for approximately the next month.

14.     Likewise, around mid-to-late May 2020, although AMBITEC, INC. planned to make Matan Suissa the Supervisor over customer service to train new employees, a/k/a Defendant's Customer Service Manager, because Suissa was bombarded with work from Eichenblatt as well as shipping tasks from the warehouse, NWOSUOCHA helped with: (a) training Defendant's new customer service representatives and assisted them with becoming familiar with AMBITEC, INC.'s logistics and merchandise process; and (b) de-escalating calls from irate customers who did not receive their orders on time as part of Plaintiff helping to meet Defendant's goal to have customer service representatives avoid any chargeback claims that would affect the company account(s).

15.     In July 2020, several employees at AMBITEC, INC.'s warehouse facility became sick and three (3) out of four (4) AMBITEC, INC. employees who were tested ultimately were confirmed to be positive for COVID-19—including (i) Levi Rosenberg (White); (ii) Muska Rosenberg (White); and (3) Matan Suissa (White)—and because NWOSUOCHA had a fever during the same week, Plaintiff got tested and ultimately was also confirmed to have COVID-19.

16.     Between approximately early July 2020 and late July 2020, NWOSUOCHA worked from home for Defendant while Plaintiff was awaiting COVID-19 test results and quarantining because of COVID-19.

17.     Throughout the time NWOSUOCHA worked from home for Defendant during July 2020, Plaintiff's immediate supervisor, Berns, communicated with NWOSUOCHA about work as well as updates on Plaintiff's condition and the status of NWOSUOCHA testing negative for COVID-19 in order for Plaintiff to be cleared to physically return to AMBITEC, INC.'s warehouse facility.

18.     However, on or around July 28, 2020, Berns contacted NWOSUOCHA and instructed Plaintiff to come back to the warehouse to resume working in person—despite the fact that Plaintiff informed Berns that NWOSUOCHA had not yet received a negative COVID-19 test result—because Berns believed the number of people dying from COVID-19 were down and there was no real risk of endangering the safety of Plaintiff or other employees by NWOSUOCHA returning to work in person.

19.     NWOSUOCHA informed Berns on or around July 28, 2020 that Plaintiff believed it was safer to wait for pending test results so that NWOSUOCHA did not infect other employees, in addition to which Plaintiff explained he knew at least two (2) people who died as a result of COVID-19, but moments later Eichenblatt called NWOSUOCHA from Berns' phone and Eichenblatt instructed Plaintiff that he was required to return to work in person in order to help Berns with upcoming "projects" or else Eichenblatt would immediately terminate NWOSUOCHA's employment.

20.     Further on or around July 28, 2020, NWOSUOCHA not only discussed with Eichenblatt during their phone call that Plaintiff had been working productively from home but

that NWOSUOCHA had no knowledge or any schedule of new or upcoming projects from Bern—all while AMBITEC, INC. allowed Alexis Ramos to stay at home for approximately four (4) months working remotely even though Ramos was never sick nor had she contracted COVID-19.

21.    Between approximately July 29, 2020 and August 12, 2020, NWOSUOCHA worked in person at AMBITEC, INC.'s warehouse.

22.    On August 12, 2020, after NWOSUOCHA worked the majority of the day at AMBITEC, INC.'s warehouse, Berns first asked Plaintiff to send Daniela, another Social Media Marketing Assistant, all of the spreadsheets and content rubrics that Plaintiff had previously created, and after NWOSUOCHA continued completing his regular work tasks, Berns called Plaintiff into Defendant's break room.

23.     When NWOSUOCHA went to AMBITEC, INC.'s break room on August 12, 2020, Berns and Eichenblatt handed Plaintiff a short document that Berns had typed up which contained purported issues with Plaintiff's use of hashtags in Defendant's Instagram account and Eichenblatt opened the meeting by telling NWOSUOCHA that Plaintiff purportedly "had tension" with Berns and "had not talked to" Berns.

24.    In response, NWOSUOCHA told Eichenblatt on August 12, 2020 Plaintiff had no issues communicating with Berns, and NWOSUOCHA asked Eichenblatt and Berns to explain what problems they had with Plaintiff because no such problems had ever previously been communicated to NWOSUOCHA.

25.    However, Eichenblatt repeatedly insisted on August 12, 2020 that there were problems with the hashtags NWOSUOCHA used on AMBITEC, INC.'s Instagram account and

with NWOSUOCHA's knowledge of the ballistic gear and other products sold by AMBITEC, INC., as a result of which Eichenblatt terminated Plaintiff's employment.

26.     The reasons proffered by AMBITEC, INC. in August 2020 for terminating NWOSUOCHA's employment were false and known to be false by Defendant at the time of Plaintiff's termination and instead were a pretext for unlawful disparate treatment and race/color discrimination and retaliation against NWOSUOCHA in violation of Section 1981, Title VII, and the FCRA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

27.     On December 23, 2020, NWOSUOCHA dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR) against AMBITEC, INC., which EEOC Charge No. 510-2020-05277 is attached hereto as Exhibit A.

28.     On or around December 15, 2021, the EEOC issued a Notice of Right to Sue to NWOSUOCHA on Charge No. 510-2020-05277, which Notice is attached hereto as Exhibit B.

29.     As of February 10, 2022, more than One Hundred and Eighty (180) days have passed since the filing of NWOSUOCHA's Charge of Discrimination on December 23, 2020 and the FCHR did not issue any determination concerning NWOSUOCHA's Charge.  As a result, pursuant to F.S. §760.11(18), which provides that in the event that the FCHR fails to conciliate or determine whether there is reasonable cause on any complaint under that section within 180 days of the filing of the complaint, an aggrieved person may file a civil action "as if the commission determined that there was reasonable cause," NWOSUOCHA has exhausted all administrative remedies under Florida as well as Federal law.

30.     This Complaint is being filed with the Court within Fifty-Seven (57) days of NWOSUOCHA's receipt of the Notice of Right to Sue in connection with Charge No. 510-2020-05277 and Plaintiff has exhausted all administrative remedies on the claims pled in the Complaint.

31.     All conditions precedent to the institution of this action have either occurred or been waived.

## COUNT I
## RACE/COLOR DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1981

Plaintiff, EMELIKE NWOSUOCHA, reasserts and reaffirms the allegations of Paragraphs 1 through 31 as if fully set forth herein and further states that this is an action against AMBITEC, INC. for race/color discrimination in violation of 42 U.S.C. §1981.

32.     42 U.S.C. §1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

33.     Moreover, for purposes of 42 U.S.C. §1981, the term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

34.     Between approximately January 2020 and August 2020, AMBITEC, INC.'s management personnel subjected NWOSUOCHA to: (a) unwelcome harassment and discrimination because of NWOSUOCHA's race/color, African American/Black, which harassment was continuing, severe, and pervasive, and which constituted a hostile work

9

environment; and (b) disparate treatment because of NWOSUOCHA's race/color, African American/Black, all in violation of 42 U.S.C. §1981.

35.      AMBITEC, INC.'s management knew about the unlawful racial harassment and disparate treatment of NWOSUOCHA but Defendant failed to take appropriate corrective action to address the unlawful conduct against NWOSUOCHA, in violation of 42 U.S.C. §1981.

36.      AMBITEC, INC.'s disparate treatment of NWOSUOCHA because of Plaintiff's race/color, African American/Black, was so severe and pervasive that it altered, the terms, conditions, and privileges of NWOSUOCHA's employment with Defendant in violation of 42 U.S.C. §1981.

37.      On August 12, 2020, AMBITEC, INC. terminated NWOSUOCHA's employment because of Plaintiff's race/color, African American/Black, in violation of 42 U.S.C. §1981.

38.      A motivating factor behind AMBITEC, INC.'s decision in August 2020 to terminate NWOSUOCHA's was Plaintiff's race/color, African American/Black, in violation of 42 U.S.C. §1981.

39.      AMBITEC, INC.'s violations of NWOSUOCHA's rights under 42 U.S.C. §1981 were intentional and undertaken with malice and a reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States.  As such, NWOSUOCHA is entitled to punitive damages against AMBITEC, INC. pursuant to 42 U.S.C. §1981a(a)(1).

40.      NWOSUOCHA has suffered lost earnings, emotional distress, loss of self-esteem, and other injuries and damages as a direct result of AMBITEC, INC.'s violations of 42 U.S.C. §1981.

41.      Pursuant to 42 U.S.C. §1988(b), NWOSUOCHA is entitled to recover his reasonable attorneys' fees and costs from AMBITEC, INC.

WHEREFORE, Plaintiff, EMELIKE NWOSUOCHA, demands judgment against Defendant, AMBITEC, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, punitive damages, equitable relief including but not limited to front pay, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

**COUNT II**
**RETALIATION IN VIOLATION OF 42 U.S.C. §1981**

Plaintiff, EMELIKE NWOSUOCHA, reasserts and reaffirms the allegations of Paragraphs 1 through 31 as if fully set forth herein and further states that this is an action against AMBITEC, INC. for Retaliation in violation of 42 U.S.C. §1981.

42.     On multiple occasions during NWOSUOCHA's employment with AMBITEC, INC. between January 2020 and August 2020, NWOSUOCHA objected to and opposed what Plaintiff in good faith believed was racial harassment and disparate treatment by AMBITEC, INC. against Plaintiff because of Plaintiff's race/color, African American/Black.

43.     When NWOSUOCHA complained objected to and opposed between January 2020 and August 2020 what Plaintiff reasonably and in good faith believed was unlawful race discrimination against him because of Plaintiff's race/color, African American/Black, NWOSUOCHA engaged in protected activity within the meaning of 42 U.S.C. §1981.

44.     In retaliation for NWOSUOCHA's good faith opposition to AMBITEC, INC.'s racial harassment and disparate treatment, AMBITEC, INC. unlawfully terminated Plaintiff's employment in August 2020 for reasons that were false and a pretext for unlawful retaliation against Plaintiff in violation of 42 U.S.C. §1981.

45.     AMBITEC, INC.'s retaliation against NWOSUOCHA in violation of his rights under 42 U.S.C. §1981 was intentional and undertaken with malice and a reckless disregard for

Plaintiff's rights as guaranteed under the laws of the United States.  As such, NWOSUOCHA is entitled to punitive damages against AMBITEC, INC. pursuant to 42 U.S.C. §1981a(a)(1).

46.     NWOSUOCHA has suffered lost earnings, emotional distress, loss of self-esteem, and other injuries and damages as a direct result of AMBITEC, INC.'s retaliation in violation of 42 U.S.C. §1981.

47.     Pursuant to 42 U.S.C. §1988(b), NWOSUOCHA is entitled to recover his reasonable attorneys' fees and costs from AMBITEC, INC.

WHEREFORE, Plaintiff, EMELIKE NWOSUOCHA, demands judgment against Defendant, AMBITEC, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, punitive damages, equitable relief including but not limited to front pay, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## COUNT III
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e ET SEQ. - RACE DISCRIMINATION

Plaintiff, EMELIKE NWOSUOCHA, reasserts and reaffirms the allegations of Paragraphs 1 through 31 as if fully set forth herein and further states that this is an action against AMBITEC, INC. for race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

48.     Title VII of the Civil Rights Act of 1964, as amended, provides that it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color ..." 42 U.S.C. §2000e-2(a)(1).

49.     Between approximately January 2020 and August 2020, AMBITEC, INC.'s management personnel subjected NWOSUOCHA to: (a) unwelcome harassment and discrimination because of NWOSUOCHA's race/color, African American/Black, which harassment was continuing, severe, and pervasive, and which constituted a hostile work environment; and (b) disparate treatment because of NWOSUOCHA's race/color, African American/Black, all in violation of Title VII, 42 U.S.C. §2000e-2(a)(1).

50.     AMBITEC, INC.'s management knew about the unlawful racial harassment and disparate treatment of NWOSUOCHA but Defendant failed to take appropriate corrective action to address the unlawful conduct against NWOSUOCHA, in violation of Title VII, 42 U.S.C. §2000e-2(a)(1).

51.     AMBITEC, INC.'s disparate treatment of NWOSUOCHA because of Plaintiff's race/color, African American/Black, was so severe and pervasive that it altered, the terms, conditions, and privileges of NWOSUOCHA's employment with Defendant in violation of Title VII, 42 U.S.C. §2000e-2(a)(1).

52.     On August 12, 2020, AMBITEC, INC. terminated NWOSUOCHA's employment because of Plaintiff's race/color, African American/Black, in violation of Title VII, 42 U.S.C. §2000e-2(a)(1).

53.     A motivating factor behind AMBITEC, INC.'s decision in August 2020 to terminate NWOSUOCHA's was Plaintiff's race/color, African American/Black, in violation of 42 U.S.C. §1981.

54.     AMBITEC, INC.'s violations of Title VII were intentional and were done with malice and reckless disregard for NWOSUOCHA's rights as guaranteed under the laws of the United States.

55.     NWOSUOCHA has suffered lost earnings and employment benefits, emotional distress, loss of self-esteem and other injuries as a direct result of AMBITEC, INC.'s violations of 42 U.S.C. §2000e-2(a)(1).

56.     Pursuant to 42 U.S.C. §2000e-5(k) and §1988(b), NWOSUOCHA is entitled to recover from Defendant his reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff, EMELIKE NWOSUOCHA, demands judgment against Defendant, AMBITEC, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not limited to front pay, punitive damages, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

**COUNT IV**
**RETALIATION IN VIOLATION OF TITLE VII**
**OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e *ET SEQ.***

Plaintiff, EMELIKE NWOSUOCHA, reasserts and reaffirms the allegations of Paragraphs 1 through 31 as if fully set forth herein and further states that this is an action against AMBITEC, INC., for Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3.

57.     Pursuant to 42 U.S.C. §2000e-3(a), "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees …. because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

58.     On multiple occasions during NWOSUOCHA's employment with AMBITEC, INC. between January 2020 and August 2020, NWOSUOCHA objected to and opposed what

Plaintiff in good faith believed was racial harassment and disparate treatment by AMBITEC, INC. against Plaintiff because of Plaintiff's race/color, African American/Black.

59.    When NWOSUOCHA complained objected to and opposed between January 2020 and August 2020 what Plaintiff reasonably and in good faith believed was unlawful race discrimination against him because of Plaintiff's race/color, African American/Black, NWOSUOCHA engaged in protected activity within the meaning of Title VII, 42 U.S.C. §2000e-3(a).

60.    In retaliation for NWOSUOCHA's good faith opposition to AMBITEC, INC.'s racial harassment and disparate treatment, AMBITEC, INC. unlawfully terminated Plaintiff's employment in August 2020 for reasons that were false and a pretext for unlawful retaliation against Plaintiff in violation of 42 U.S.C. §1981.

61.    AMBITEC, INC. intentionally retaliated against NWOSUOCHA in August 2020 by terminating Plaintiff's employment because of his good faith opposition to what Plaintiff reasonably believed was unlawful racial harassment and disparate treatment, in violation of 42 U.S.C. §2000e-3(a).

62.    The fact that NWOSUOCHA engaged in activity protected by Title VII was a motivating factor in AMBITEC, INC.'s August 2020 termination of Plaintiff's employment, in violation of 42 U.S.C. §2000e-3(a).

63.    AMBITEC, INC.'s unlawful retaliation against NWOSUOCHA was intentional and done with malice and reckless disregard for NWOSUOCHA's rights as guaranteed under Title VII.

64.    As a direct and proximate result of AMBITEC, INC.'s unlawful retaliation against NWOSUOCHA, Plaintiff has suffered damages and was deprived of job-related

economic benefits, all in amounts to be established at trial, including suffering a loss of earnings, emotional distress, loss of self-esteem and other injuries as a direct result of Defendant's violations of 42 U.S.C. §2000e-3(a).

65.　　Pursuant to 42 U.S.C. §2000e-5(k) and §1988(b), NWOSUOCHA is entitled to recover his reasonable attorneys' fees and costs from AMBITEC, INC.

WHEREFORE, Plaintiff, EMELIKE NWOSUOCHA, demands judgment against Defendant, AMBITEC, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not limited to front pay, punitive damages, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## COUNT V
## RACE DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

Plaintiff, EMELIKE NWOSUOCHA, reasserts and reaffirms the allegations set forth in paragraphs 1 through 31 above and further states that this is an action against AMBITEC, INC. for race discrimination in violation of Florida Statutes §760.10(1).

66.　　The Florida Civil Rights Act provides that it is an unlawful employment practice for an employer "[t]o discharge . . . any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color . . ." F.S. §760.10(1)(a).

67.　　At all times material to this action, NWOSUOCHA has been an aggrieved person within the meaning of the FCRA, F.S. §760.02(10).

68.　　Between approximately January 2020 and August 2020, AMBITEC, INC.'s management personnel subjected NWOSUOCHA to: (a) unwelcome harassment and discrimination because of NWOSUOCHA's race/color, African American/Black, which

harassment was continuing, severe, and pervasive, and which constituted a hostile work environment; and (b) disparate treatment because of NWOSUOCHA's race/color, African American/Black, all in violation of FCRA, F.S. §760.10(1).

69.     AMBITEC, INC.'s management knew about the unlawful racial harassment and disparate treatment of NWOSUOCHA but Defendant failed to take appropriate corrective action to address the unlawful conduct against NWOSUOCHA, in violation of FCRA, F.S. §760.10(1).

70.     AMBITEC, INC.'s disparate treatment of NWOSUOCHA because of Plaintiff's race/color, African American/Black, was so severe and pervasive that it altered, the terms, conditions, and privileges of NWOSUOCHA's employment with Defendant in violation of FCRA, F.S. §760.10(1).

71.     On August 12, 2020, AMBITEC, INC. terminated NWOSUOCHA's employment because of Plaintiff's race/color, African American/Black, in violation of FCRA, F.S. §760.10(1).

72.     A motivating factor behind AMBITEC, INC.'s decision in August 2020 to terminate NWOSUOCHA's was Plaintiff's race/color, African American/Black, in violation of FCRA, F.S. §760.10(1).

73.     AMBITEC, INC.'s violations of NWOSUOCHA's rights under F.S. §760.10(1)(a) were intentional and were done with malice and reckless disregard for NWOSUOCHA's rights as guaranteed under the laws of the State of Florida, such that NWOSUOCHA is entitled to punitive damages against Defendant pursuant to F.S. §760.11(5).

74.     NWOSUOCHA has suffered lost earnings, emotional distress, loss of self-esteem, and other damages as a direct result of AMBITEC, INC.'s violations of F.S. §760.10(1).

75.     Pursuant to F.S. §760.11(5), NWOSUOCHA is entitled to recover his reasonable attorneys' fees and costs from AMBITEC, INC. as a result of Defendant's violations of the FCRA.

WHEREFORE, Plaintiff, EMELIKE NWOSUOCHA, demands judgment against Defendant, AMBITEC, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, equitable relief, interest, costs, attorneys' fees, expert fees and such other and further relief as this Honorable Court deems proper.

**COUNT VI**
**RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, F.S. §760.10**

Plaintiff, EMELIKE NWOSUOCHA, reasserts and reaffirms the allegations set forth in paragraphs 1 through 31 above and further states that this is an action against AMBITEC, INC. for Retaliation in violation of the Florida Civil Rights Act, F.S. §760.10.

76.     Pursuant to F.S. §760.10(7), it is "an unlawful employment practice for an employer … to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

77.     At all times material to this action, NWOSUOCHA has been an aggrieved person within the meaning of the FCRA, F.S. §760.02(10).

78.     On multiple occasions during NWOSUOCHA's employment with AMBITEC, INC. between January 2020 and August 2020, NWOSUOCHA objected to and opposed what Plaintiff in good faith believed was racial harassment and disparate treatment by AMBITEC, INC. against Plaintiff because of Plaintiff's race/color, African American/Black.

79.     When NWOSUOCHA complained objected to and opposed between January 2020 and August 2020 what Plaintiff reasonably and in good faith believed was unlawful race discrimination against him because of Plaintiff's race/color, African American/Black, NWOSUOCHA engaged in protected activity within the meaning of the FCRA, F.S. §760.10(7).

80.     In retaliation for NWOSUOCHA's good faith opposition to AMBITEC, INC.'s racial harassment and disparate treatment, AMBITEC, INC. unlawfully terminated Plaintiff's employment in August 2020 for reasons that were false and a pretext for unlawful retaliation against Plaintiff in violation of the FCRA, F.S. §760.10(7).

81.     AMBITEC, INC. intentionally retaliated against NWOSUOCHA in August 2020 by terminating Plaintiff's employment because of his good faith opposition to what Plaintiff reasonably believed was unlawful racial harassment and disparate treatment, in violation of the FCRA, F.S. §760.10(7).

82.     The fact that NWOSUOCHA engaged in activity protected by Title VII was a motivating factor in AMBITEC, INC.'s August 2020 termination of Plaintiff's employment, in violation of the FCRA, F.S. §760.10(7).

83.     AMBITEC, INC.'s violations of NWOSUOCHA's rights under F.S. §760.10 were intentional and were done with malice and reckless disregard for NWOSUOCHA's rights as guaranteed under the laws of the State of Florida through the Florida Civil Rights Act, such that NWOSUOCHA is entitled to punitive damages against AMBITEC, INC. pursuant to F.S. §760.11(5).

84.     NWOSUOCHA has suffered lost earnings, emotional distress, loss of self-esteem and other injuries as a direct result of Defendant's violations of F.S. §760.10(7).

85.     Pursuant to F.S. §760.11(5), NWOSUOCHA is entitled to recover his reasonable attorneys' fees and costs from AMBITEC, INC. as a result of Defendant's violations of the FCRA.

WHEREFORE, Plaintiff, EMELIKE NWOSUOCHA, demands judgment against Defendant, AMBITEC, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not limited to front pay, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## JURY TRIAL DEMAND

EMELIKE NWOSUOCHA demands trial by jury on all issues so triable.

Dated:  February 10, 2022                     Respectfully submitted,

                                  By:     **s/KEITH M. STERN**
                                          Keith M. Stern, Esquire
                                          Florida Bar No. 321000
                                          E-mail:  employlaw@keithstern.com
                                          LAW OFFICE OF KEITH M. STERN, P.A.
                                          80 S.W. 8th Street, Suite 2000
                                          Miami, Florida 33130
                                          Telephone:  (305) 901-1379
                                          Facsimile:  (561) 288-9031

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 510-2020-05277 |

| FLORIDA COMMISSION ON HUMAN RELATIONS | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| **EMELIKE W NWOSUOCHA** | ▉▉▉▉▉▉▉▉ | |

| Street Address | City, State and ZIP Code |
|---|---|
| ▉▉▉▉▉▉▉▉ | **WEST DADE,FL 33196** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **AMBITEC INC** | **Under 15** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **7770 NW 22ND AVE, MIAMI, FL 33147** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest  **06-01-2020**    Latest  **08-01-2020**<br><br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I was hired on June 5, 2020, as a Postal Media Marketing Assistance.  I was terminated during August 2020, allegedly for being late to work, and using too many hash tags.  I believe that I was discharged due to my race because I never received any negative evaluations or write-ups.  Additionally, my employer required all employees to undergo a self-quarantine do to a Covid-19 outbreak in the workplace.  I tested positive for Covid-19, and I was the only employee required to return to work before receiving a negative testing.  I was also subjected to racial commentary/implicitness by   Eli LNU, CEO (non-Black).  Specifically, on or around June of 2020, when many cities were being rioted in protest of racial tensions concerning Blacks being killed by police officers, Eli  looked at me and said, If you are going o loot, please let me know.  I was dismayed by the comment.**

**On another occasion during an office luncheon, Eli asked me in the presence of several colleagues, Why is the Black community so poor, and why cant they get out of poverty?  I was Also, during a website layout, I posted a photo of a Black female soldier in tactical gear**

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Emelike Nwosuocha on 12-23-2020 05:44 AM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

EEOC Form 5 (11/09)

| C H A R G E  O F  D I S C R I M I N A T I O N | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 510-2020-05277 |

| **FLORIDA COMMISSION ON HUMAN RELATIONS** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

**that the company sold.  Eli made me remove the posting, and it was replaced with a picture of a White woman marketing the product.  I was one (1) of only two (2) Blacks employed by the company.  I was also replaced by a non-Black.**

**I believe that I was subjected to discriminatory practices and discharged due to my race (Black), in violation of Title VII of the Civil Rights Act of 1964, as amended.**

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Emelike Nwosuocha on 12-23-2020 05:44 AM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:**  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.**  EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.**  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# EXHIBIT B

EEOC Form 161-B (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Emelike W. Nwosuocha** <br><br> ▓▓▓▓▓▓▓▓ <br> **West Dade, FL 33196** | From:  **Miami District Office** <br> **Miami Tower, 100 S E 2nd Street** <br> **Suite 1500** <br> **Miami, FL 33131** |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2020-05277** | **Latasha Nelson,** <br> **Investigator** | **(786) 648-5841** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.  If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jacqueline Gabriel for*

**Paul Valenti,**
**District Director**

12/15/2021
*(Date Issued)*

Enclosures(s)

cc:

| **Respondent's Representative** | **Charging Party's Legal Representative** |
|---|---|
| **Menachem M. Berns** <br> **Marketing Director** <br> **Ambitec, Inc.** <br> **4045 SHERIDAN AVE, STE 118** <br> **Miami Beach, FL 33140** | **Keith Stern, Esq.** <br> **LAW OFFICE OF KEITH M. STERN, P.A.** <br> **80 SW 8th Street, Suite 2000** <br> **Miami, FL 33130** |

INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS   **--   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS   **--   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION   **--   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE   **--   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*